**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES | * |
| vs. | *   Case No.: 22-15 APM |
| THOMAS E. CALDWELL | * |

\* \* \* \* \* \* \* \* \* \* \*

## CALDWELL'S REPLY TO GOVERNMENT'S RESPONSE TO DEFENDANT'S NOTICE OF NEW AUTHORITY

Comes Now the Defendant, Thomas E. Caldwell ("Caldwell"), by and through counsel, David W. Fischer, Esq., and briefly replies to the Government's Response to Defendant's Notice of New Authority and Supplemental Argument as to Caldwell's Motions for Judgment of Acquittal and New Trial as set forth *infra*.

**A. Judgment of Acquittal Should be Granted as to Count 3.**

From the beginning of Caldwell's prosecution, the Government has represented to the Court—and later the jury--its position that Caldwell and his co-defendants violated 18 U.S.C. §1512(c)(2) based upon the defendants' alleged intent to halt the January 6th Electoral College certification either: (1) by armed force (i.e., the "QRF"); or (2) by physically intimidating Members of Congress out of the Capitol building:

- "In this situation, [the corrupt intent was] intimidating Congress. That is what *the government intends to prove* at trial; that the defendants here were corrupt *because they intended to intimidate Congress . . . into stopping what Congress was doing*." United States v. Caldwell, 1:22-cr-00015-APM, (Tr., 59) (Sept. 8, 2021 Motions Hrg.) (argument of AUSA J. Nestler) (emphasis added).

1

- "So what they did was *they broke through the doors and made Congress literally flee from their seats* so they couldn't do what they were doing. *The government's position is that's what evidences their corrupt state of mind*." *Id.* (emphasis added).

- "But the object here was not just to halt the proceedings, *the object here was to scare Congress into halting the proceedings*." *Id.*, (Tr., 52) (emphasis added).

- "I'll start by briefly explaining these defendants' attack on the Capitol and providing an overview of the conspiracy. . . . They did not go to the Capitol to defend or to help. *They went to attack*. They were at the Capitol to use their numbers and their physical force *to intimidate the elected representatives who were working inside doing their constitutional duty*." (Tr., 1088-89) (opening argument, AUSA J. Nestler) (emphasis added).

- "[T]hese defendants *did use force to drive the members of Congress out of the Capitol*, occupy the building and stop for a time Congress's joint session that is a critical part of the transfer of power." (Tr., 1097) (opening argument, AUSA J. Nestler) (emphasis added).

- "Let's turn to these defendants' efforts on January 6th *to attack the Capitol and stop Congress's work*. On January 6th, Rhodes and Meggs and Harrelson and Watkins and Caldwell saw that time was slipping away. Vice President Pence announced that he would not stop the certification. President Trump did not invoke the Insurrection Act. *These defendants needed to take matters into their own hands*. They needed *to activate the plan* they had agreed on. Do whatever was necessary, including using force, to stop the transfer of power." (Tr., 1109) (opening argument, AUSA J. Nestler) (emphasis added).

The jury rejected the Government's first claim that Caldwell conspired with his co-defendants to "attack" the Capitol. Second, the Government provided no evidence that Caldwell acted "corruptly" under the Government's own definition, i.e., that he acted to physically intimidate Members of Congress into fleeing the Capitol building.

The jury acquitted Caldwell—and co-defendants Stewart Rhodes and Ken Harrelson—of conspiracy to violate 18 U.S.C. § 1512. Importantly, Caldwell (and Rhodes) was also acquitted

2

of conspiracy to commit a violation of 18 U.S.C. § 372. In other words, the jury rejected the very claims that the Government makes in opposition to Caldwell's Motion for Judgment of Acquittal as to §1512(c)(2), i.e., that Members of Congress were, "by force, intimidation, or threat," chased away from Capitol Hill on January 6 *by Caldwell's actions*. *See* ECF 400 at 32 (jury instruction as to § 372 conspiracy, Count 4). Accordingly, two things are indisputable: 1) Caldwell, based upon the jury finding, did not conspire with anyone to use force *or* to intimidate Members of Congress from Capitol Hill, even after Vice-President Pence allowed the certification to proceed; and 2) Members of Congress were *ordered* to be evacuated from the Capitol before Caldwell ever set foot on restricted Capitol grounds. The Government can point to no specific actions taken by Caldwell *on January 6* showing him using "force," "intimidation," "threat" or any violence whatsoever. If Caldwell's "corrupt intent" was, as the Government has repeatedly claimed, to expel the Congress from Capitol Hill by physical threat, coercion, or intimidation, he picked a rather unusual time to act upon his intent, i.e., after Members of Congress had already been *ordered* to evacuate out of the Capitol Building and Congress was recessed.

The Government's filing, and prior opposition filings, to Caldwell's Motion for Judgment of Acquittal, is underwhelming vis-à-vis addressing the obvious gaps in the evidence needed to establish that Caldwell violated 18 U.S.C. § 1512(c)(2). The Government first cites a "comment"[1] that Caldwell made on Facebook: "It begins for real Jan 5 and 6 in Washington,

---

[1] The two comments cited by the Government in its filing lack context. As the Court may recall, at a pretrial Motion in *Limine* hearing Caldwell objected to these two "comments" on the grounds that the Government could not produce the Facebook records showing the posts, comments, or statements to which Caldwell was commenting upon. Without context, these statements should be entitled to little weight in the Court's assessment of Caldwell's Motion for Judgment of Acquittal.

D.C. when we *mobilize in the streets*. Let them try to certify some crud on capitol hill with a million or more patriots *in the streets*. This kettle is set to boil . . .[.]" ECF No. 538 at 9 (emphasis added). This comment is of little value to the Government's argument. First, the phrase "in the streets" is synonymous with legal, *peaceful* protest activity. Second, Caldwell is not suggesting in this comment that *he* will engage in violent activity; rather, he is predicting that protestors will be angry if the certification is "not on the level."

The Government next cites a second Caldwell Facebook "comment": "I swore to support and defend the Constitution of the United States against all enemies foreign and domestic. I did the former, I have done the latter peacefully but *they* have morphed into pure evil even *blatantly rigging an election* and paying off *the political caste*. We must smite them now and drive them down." *Id*. The Government, unfortunately, misconstrues Caldwell's comment as being aimed at Congress. The subject of the quote ("they") are those who "blatantly rigg[ed] an election" and who "pa[id] off the political caste." Caldwell was clearly not referring to Congress as "they." Congress does not "rig" elections and, in fact, is one of many components that comprise *the* "political caste" Caldwell was likely referring to as being paid off. A fair interpretation of Caldwell's comment is that he is encouraging citizens to resist those[2] who try to manipulate elections to favor certain entrenched politicians.

---

[2] Because Caldwell's comment lacks context, i.e., the post, comment, or statement that prompted his comment was not provided by the Government, it is impossible to know who the "they" is that Caldwell was referring to. Based on Caldwell's other posts and comments, however, it is likely that he was referring to "Big Tech" companies like Facebook, or perhaps major media companies, which most Trump supporters viewed as favoring candidate Joe Biden by censoring certain stories. Caldwell and his wife, as the evidence at trial showed, were actively seeking to remove themselves from Facebook well before January 6 and were clearly skeptics of major media outlets.

The Government next relies on a post-January 6 statement where Caldwell claimed: "I grabbed up my American flag and said let's take the damn capitol so people started surging forward and climbing the scaffolding outside[.]" ECF No. 538 at 9. The Government's reliance on this statement is misplaced. First, even the Court acknowledged at one point during the trial that Caldwell's zany statements often didn't match up with his actions as seen through multiple videos, photos, and CCTV at the Capitol. Second, as noted in previous defense filings, the Government spent more than an hour in its redirect examination of Special Agent Michael Palian discrediting the accuracy and reliability of Caldwell's fantastical statements. *See United States v. Dickerson*, 163 F.3d 639, 641 (D.C. Cir. 1999) ("a conviction cannot rest on a defendant's out-of-court statement made subsequent to the crime . . . unless the government produces substantial independent evidence which would tend to establish the trustworthiness of the statement.").[3] The notion that a 100% disabled veteran wearing Depends™ while photobombing Washington, D.C. with his wife was literally attempting to "take the Capitol" is absurd and contrary to the overwhelming video evidence introduced in the Government's own case-in-chief.

The Government, as it did before the jury, reverts to broad generalities to support its argument: "These words and actions established Defendant Caldwell's desire to stop Congress

---

[3] The Government previously argued that Caldwell "aided and abetted" one or more of his *co-defendants*. *See* ECF 383 at 47 (Govt. Opp. to MJOA) ("As noted above, although no evidence shows that Rhodes or Caldwell ever entered the Capitol building, they aided and abetted those actions undertaken by the other defendants, and bear substantive criminal liability for those actions under Pinkerton.").

After three filings on the subject, the Government still has not identified which "defendant" Caldwell specifically aided and abetted or what specific actions he engaged in *on January 6* to "assist the principal." Caldwell did not know Floridians Meggs and Harrelson, had not—per the testimony of Special Agent Palian--communicated with Rhodes since mid-November 2020, and sent one message to Jessica Watkins on January 6, which stated: "Jessica: Where are you?" That message received no response.

from certifying the election and to use whatever means necessary—including force, intimidation, and violence—to instead procure the election victory for Donald Trump." ECF 538 at 10.  The jury rejected any notion that Caldwell intended to use "force, intimidation, or violence" on January 6.[4]  Video evidence introduced in the Government's case proved that police-manned barriers in place at the Peace Fountain walkway were vanquished at least 15 minutes before Caldwell and his wife arrived at Peace Fountain Circle.  Caldwell and his wife stayed at the Peace Fountain for more than 80 minutes while thousands of protestors entered Capitol grounds, which are typically open to the public.  And a 27-year veteran of the FBI, John Roeper, testified that, at a time and place similar to Caldwell, he saw no violence against police.  (Tr., 8396-97, 8402).

To Caldwell's knowledge, the Government has not charged any of the thousands of January 6 protestors who remained outside of the Capitol building and who refrained from assaulting police officers or other violent behavior with violating 18 U.S.C. § 1512(c)(2).  And while the Government argued before the D.C. Circuit that "trespassing" could constitute the "corrupt means"[5] to support an obstruction charge, the *Fischer* Court framed the question

---

[4] The Government claimed during opening argument that after Vice President Pence "announced he would not stop the certification" and "President Trump did not invoke the Insurrection Act," that "these defendants [decided] to take matters into their own hands" by "activat[ing] the plan they had agreed to."  (Tr., 1109).  By acquitting Caldwell, the jury rejected the claim that Caldwell was involved in "activating" a plan *after* the Capitol was breached.  As the Government claimed in closing argument that the breach of the Capitol was an "opportunity" that the defendants "seized" upon—and not something they planned or predicted—and Caldwell was acquitted of activating a post-breach plan as part of a conspiracy, that suggests, logically, that Caldwell's actions were independent of his co-defendants.  And his independent actions did not amount to "corruptly" obstructing or impeding the Congress.

[5] *United States v. Fischer*, No. 20-3038 (oral argument) (Govt. argument at 6 minutes, 58 seconds) (https://www.cadc.uscourts.gov/recordings/recordings2022.nsf/1D6FA815302719F78525891600 5C9654/$file/22-3038.mp3).

6

presented on appeal as: "[W]hether individuals who allegedly assaulted law enforcement officers while participating in the Capitol riot can be charged [under 18 U.S.C. § 1512(c)(2)]." *United States v. Fischer*, Nos. 22-3038, Consolidated with 22-3039, 22-3041, 2023 U.S. App. LEXIS 8284 at *2 (D.C. Cir. Apr. 7, 2023). Caldwell's alleged conduct, even in the light most favorable to the Government, did not evince a "corrupt" intent to obstruct and impede an empty Capitol building.

### B. Judgment of Acquittal Should also be Granted as to Count 13 (Evidence Tampering) based upon the Government's Reliance on *United States v. Young*.

Whether Judge Walker's concurring opinion is binding on the Court in relation to the definition of "corruptly"—and thus adds an "unlawful benefit" element to § 1512(c) cases--is an issue for the Court to resolve. The Court should, however, be aware that the Government argued before the D.C. Circuit in *United States v. Fischer* that its definition of "corruptly" had built in guardrails against prosecutorial overreach, including a "nexus" requirement that would "impose[] a meaningful restraint on the reach of [18 U.S.C. § 1512(c)(2)]." *See Fischer* (Govt.'s Brief at 51, 53) (internal quotation marks omitted). Importantly, in its appellate brief, the Government relied upon the Fourth Circuit's opinion in *United States v. Young*, 916 F.3d 368 (4th Cir. 2019), for its definition of what constitutes this "nexus" requirement. *See Id*. The Government's reliance on *Young* as setting forth the appropriate "nexus" standard in relation to "corruptly," ironically, strengthens Caldwell's Motion for Judgment of Acquittal as to Count 13, Evidence Tampering with Documents, pursuant to 18 U.S.C. § 1512(c)(1).

In *Young*, the Fourth Circuit ruled that the evidence was insufficient to convict under 18 U.S.C. § 1512(c)(2) where the defendant engaged in obstructive conduct aimed at thwarting an FBI investigation, but no evidence otherwise demonstrated his intent to specifically target a Grand Jury proceeding. *Id*. at 386-388. The *Young* Court stated:

7

> Even if there is sufficient evidence to demonstrate that Young obstructed an FBI investigation, *there is simply no evidence to demonstrate he was aware either that his conduct would affect a grand jury proceeding or that a grand jury or similar proceeding was impending*. And with respect to Count Four, the Government has similarly failed to provide evidence demonstrating that Young *foresaw a specific grand jury investigation or that he designed his conduct to thwart such an investigation, rather than designing his conduct to obstruct an FBI inquiry*—which he *did* foresee.

*Id*. at 387.  "Similarly," the *Young* Court continued, "although Young's actions were certainly designed to thwart an FBI inquiry, the only way the jury could have concluded he foresaw a particular grand jury investigation would be through speculation." *Id*. The *Young* Court concluded: "Although the Government established at trial that Young was constantly aware of the fact that the FBI *could* be investigating him, the Government failed to connect this general awareness—whether in combination with any of the issues discussed above or individually— with a *specific* and *reasonably foreseeable* official proceeding." *Id*. at 388 (emphasis original).

The Government's evidence establishing that Caldwell foresaw a specific Grand Jury proceeding into his conduct or that he designed his alleged "evidence tampering" to thwart a specific Grand Jury proceeding is far weaker than the evidence found insufficient in *Young*. In *Young*, the Government pointed "to Young's (1) awareness of his acquaintances' arrests; (2) status as a law enforcement officer; and (3) heightened suspicion of FBI surveillance of him, contending that these three factors should support the inference that a grand jury investigation was reasonably foreseeable to him and that he designed his conduct to obstruct such an investigation." *Id*. at 388. Yet Young's awareness that he was being surveilled by the FBI, that others around him had been arrested, and his insider knowledge as a police officer were, according to the Fourth Circuit, insufficient to establish that he knew that a grand jury proceeding was underway or imminent. *Id*. The defendant in *Young* clearly knew that he was under criminal investigation, whereas with Caldwell, "no one was waiting at [his] door with a

8

warrant; [and] no law enforcement agent was asking [him] questions." *See United States v. Wysinger*, 2019 U.S. Dist. LEXIS 106320 at *21 (W.D. Va. 2019) (finding insufficient nexus to grand jury proceeding to convict under 18 U.S.C. § 1512(c)(1) where defendant destroyed illegal drugs subsequent to two of his customers overdosing). "While the grand jury does not yet have to be convened, it is not enough for the government to argue" that Caldwell "could have speculated that some official proceeding lies somewhere in the offing." *United States v. Sutherland*, 921 F.3d 421, 426 (4th Cir. 2019).

In the instant case, the Government presented absolutely no evidence in its case-in-chief that Caldwell was personally aware that he was under investigation by the FBI, that his co-defendants were under FBI investigation, that a Grand Jury had been empaneled behind closed doors in the District to investigate his conduct or that of his acquaintances, or that he generally understood what a Grand Jury was or how it functioned. *Cf. Id.* at 388 (noting that, while Young was a police officer presumably with knowledge of the workings of the criminal justice system, "evidence failed to establish that [Young] was routinely involved [as a police officer] in grand jury proceedings—or, for that matter, had ever testified in such a proceeding."). Accordingly, the Government, in addition to reasons previously stated in prior defense filings, failed to adduce a *prima facie* case against Caldwell in relation to Count 13, Evidence Tampering pursuant to 18 U.S.C. § 1512(c)(1), and, therefore, the Court should grant judgment of acquittal as to Caldwell's evidence tampering count.

### C. Conclusion

Caldwell respectfully requests that the Court grant his Motion for Judgment of Acquittal as to Counts 3 and 13.

Respectfully Submitted,

_____/s/_____
David W. Fischer, Esq.
Federal Bar No. 023787
Law Offices of Fischer & Putzi, P.A.
Empire Towers, Suite #300
7310 Ritchie Highway
Glen Burnie, MD 21061
(410) 787-0826
Attorney for Defendant

## CERTFICATE OF SERVICE

  I HEREBY CERTIFY that on this 23nd day of April, 2023, a copy of the foregoing Caldwell's Reply to Government's Response to Defendant's Notice of New Authority was electronically filed with the Clerk of the United States District Court using CM/ECF, with a notice of said filing to the following:

Counsel for the Government:  Office of the United States Attorney
  Kathryn Rakoczy, AUSA
  Jeffrey Nestler, AUSA
  Louis Manzo, AUSA
  Troy Edwards, AUSA
  Ahmed Baset, AUSA
  Alexandra Hughes, DOJ T.A. (NSD)
  Justin Sher, DOJ T.A. (NSD)
  555 4th Street, NW
  Washington, DC 20001

        /s/
       David W. Fischer, Esq.