## UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| v. | : | Criminal Case No. 22-cr-15 (APM) |
| | : | |
| **KENNETH HARRELSON** | : | *Formerly* |
| | : | |
| Defendant | : | No. 21-cr-28 (APM) |
| | : | |

### KENNETH HARRELSON'S SENTENCING MEMORANDUM

Defendant, Kenneth Harrelson, through the undersigned counsel, Bradford L. Geyer, Esq., pleased with the Court's accommodation of his schedule, and able to review matters this morning May 8, 2023, with counsel at the Lewisberg, Pennsylvania, detention center due to the Court's assistance with the deadline, submits the following Sentencing Memorandum.

## I. INTRODUCTION AND POSTURE OF THE CASE

Initially, there are several persistent mistakes being made across the January 6, 2021, related criminal prosecutions in sentencing. Tempted to address those legal disputes after discussing sentencing points, counsel decides instead to set the stage properly by addressing some of the governing law concerns and restrictions up front so that the discussion of sentencing points will be clearer.

Although the jury was invited to find him guilty of other charges, Harrelson was convicted only of the following Counts in the Superseding Indictment on November 29, 2022. While the case was split in January 2022, the operative indictment is effectively the Eighth Superseding Indictment, filed on June 22, 2022, at Dkt. #167.

There was no special verdict for those statutes with multiple options for conviction. The

prosecution included also alternatives of aiding and abetting for many Counts.  Therefore, many

facts cannot be determined from the mere fact of conviction alone.  That is in some cases, it

cannot be determined because the jury could have found guilt in several ways.

Harrelson was found not guilty of seditious conspiracy, in violation of 18 U.S.C. § 2384

and conspiracy to violate 18 U.S.C. 1512(k)

## COUNT THREE

(Obstruction of an Official Proceeding and Aiding and Abetting)
(in violation of Title 18, United States Code, Section 1512(c)(2))

\* \* \*

(c)Whoever corruptly—
   (**1**)  alters, destroys, mutilates, or conceals a record, document,
   or other object, or attempts to do so, with the intent to impair
   the object's integrity or availability for use in an official
   proceeding; or

   (**2**)  otherwise obstructs, influences, or impedes any official
   proceeding, or attempts to do so,

shall be fined under this title or imprisoned not more than 20 years, or
both.

## COUNT FOUR

(Parading, Demonstrating, or Picketing in a Capitol Building, in
violation of Title 18, United States Code, Section 372))

If two or more persons in any State, Territory, Possession, or
District conspire to prevent, by force, intimidation, or threat, any
person from accepting or holding any office, trust, or place of
confidence under the United States, or from discharging any duties
thereof, or to induce by like means any officer of the United States
to leave the place, where his duties as an officer are required to be
performed, or to injure him in his person or property on account of
his lawful discharge of the duties of his office, or while engaged in
the lawful discharge thereof, or to injure his property so as to
molest, interrupt, hinder, or impede him in the discharge of his
official duties, each of such persons shall be fined under this title
or imprisoned not more than six years, or both.

## COUNT NINE

(Parading, Demonstrating, or Picketing in a Capitol Building, in violation of Title 18, United States Code, Section 1512(c)(1))

**(c)** Whoever corruptly—

**(1)** alters, destroys, mutilates, or conceals a record, document, or other object, or attempts to do so, with the intent to impair the object's integrity or availability for use in an official proceeding; or

* * *

shall be fined under this title or imprisoned not more than 20 years, or both.

## II. GOVERNING LAW

### A. SENTENCING GOVERNED BY SENTENCING GUIDELINES

Federal law codified at 18 U.S.C. § 3553 "Imposition of a Sentence" authorizes a federal court to impose a sentence upon the conviction of a defendant for a crime, in accordance with that statute's terms and the guidelines promulgated by the U.S. Sentencing Commission under it authority at law.

Of course, the guidelines are guidelines and the U.S. Supreme Court has ruled that constitutional due process requires that a judge as a neutral decision-maker must make the decision in evaluating the case and applying the guidelines and not apply the guidelines mechanistically or as a binding formula. Nevertheless, Congress did enact the sentencing reforms and the appellate courts approach a departure from the guidelines as requiring a very serious reason.

In interpreting the Sentencing Guidelines, the Court applies the ordinary tools of statutory interpretation ***and looks to the plain meaning of its terms.*** Many circuits agree. See, e.g., *United States v. Savin*, 349 F.3d 27, 35–36 (2d Cir. 2003); *United States v. Peterson*, 629 F.3d 432, 434 (4th Cir. 2011); *United States v. Bustillos-Pena*, 612 F.3d 863, 868 (5th Cir. 2010); *United States v. Bahhur*, 200 F.3d 917, 927 (6th Cir. 2000); *United States v. Smith*, 989 F.3d 575, 586 (7th Cir. 2021); *United States v. Collins*, 754 F.3d 626, 630 (8th Cir. 2014); *United States v. Kirilyuk*,

> 29 F.4th 1128, 1137 (9th Cir. 2022). ***To discern the text's plain***
> ***meaning, courts look to dictionary definitions*** and ***analyze the word or***
> ***phrase in context***. See, e.g., *Kaufman v. Nielsen*, 896 F.3d 475, 485–87
> (D.C. Cir. 2018). The relevant context for a sentencing guideline ***may***
> ***include the commentary***. See, e.g., *Kirilyuk*, 29 F.4th at 1137–39.
> ***Finally, the Court looks to precedent to analyze how other courts have***
> ***interpreted this phrase or similar phrases.***

*United States v. Hunter Seefried*, Memorandum Opinion of Trevor N. McFadden (October 31, 2022) (interpreting "administration of justice" under 18 U.S.C. § 1512(c)(2)), Criminal Case No. 21-cr-287 (TNM), U.S. District Court for the District of Columbia *(Bolded and italicized emphases added)*.

## B. ENTIRE PROCESS IS INVALID

In paragraph 39 of the Probation Office's Pre-Sentencing Investigation, the Probation

Office admits point blank what is otherwise obvious and clear:

> 39. The information contained in this section was obtained from the
> various Indictments filed in this case, the government's Opposition to
> Defendants' Motions for Judgments of Acquittal, and additional
> information provided by the government.

In other words, nothing in the Pre-Sentencing Investigation is remotely valid.

No conclusions in the PSI or drawn from it are valid.  The Government's Sentencing

Memorandum is similarly built on air.

Across the spectrum of January 6, 2021, cases, we see a persistent and common mistake.

While the Probation Office clearly has invested a lot of work, the exercise is flawed.  The

Probation Officers are taking the unproven allegations of charging documents as the factual basis

for a sentencing analysis, paying no attention to where the evidence at trial diverged dramatically

from the accusations at the outset of the case.

The trial judge admonished the jury in jury instructions that the indictment is not

evidence.  The Honorable District Court Judge Amit Mehta instructed the jury on page 15

*(emphases added)*:

4

**Summary of Indictment**

> With these preliminary instructions in mind, let us turn to the charges against the defendants, as contained in the indictment. ***The indictment itself is not evidence***. It merely describes the charges made against each defendant and is the means by which each defendant was formally notified of the charges against him or her. ***The indictment is merely an accusation.*** It may not be considered by you as evidence of the guilt of any defendant, and you must not draw any inference of guilt from it.

Yet the trial judge should have admonished the Probation Office that the indictment is not evidence. The entire process was driven by the mistake of thinking that the indictment can inform us of what the facts are.

The Government tries to wriggle out of this by claiming that we are not controlled by what was introduced at trial. That is irrelevant.

The PSI in fact introduces into the process allegations that were never asserted at trial because the Government could not prove them, disproven as false under cross-examination and contrary evidence, or withdrawn by the Government.

The problem isn't whether what was admitted at trial is controlling.

The problem is that the PSI and Government's Sentencing Memorandum are built on actual falsehoods.

The understanding of the evidence and the evidence presented evolved through eight superseding indictments and during the conduct of the trial. The indictments are not only invalid as evidence, but they are ancient history in terms of what was actually learned and what was completely debunked as false throughout the conduct of the trial.

Defendant Thomas Caldwell was alleged to have been the mastermind and evil genius of the Oath Keepers. Then the Government sheepishly accepted – with nary an apology – that none

of this fantastical story was remotely true.

It is the outright falsehoods that kills this entire process now.  The Probation Office must start over.  The Government must start over.  The sentencing process must be based on factual information, not known and obvious untruths.

The worst part for the Government at this stage is that the probation office has obviously put a lot of work into doing *the wrong things*.  The DoJ has given bad guidance and instruction to those who then diligently did all the wrong things.

It is no answer to say that we could consider things outside the trial, when the entire house is built upon the sand of clearly false information.  It isn't what we might be able to do.  It is the fact that we know the entire process to be false and flawed.

### C.  COURT MAY NOT CONSIDER FACTS DISPUTED OR CRIMES NOT CHARGED

Unfortunately, the USAO has shown a pattern in sentencing proceedings to try to accuse Defendants of additional crimes for which they have not been found guilty and argue facts not proven and legal conclusions not agreed to by the Court.  The tendency by the USAO has been to argue ***disputed*** facts left ***unresolved.*** .  That problem is not a mere guideline that the Court *may not* base sentencing decisions on assertions of fact which have not been established at trial, are in conflict with the evidence at trial, or are disputed.  Any assertion by the Government which has not been formally decided must be excluded from the Court's consideration.   This is not discretionary.  Again, if a fact were unavoidably necessary to the jury verdict, the Court could presume that the jury decided the fact as a necessary stepping stone to a guilty verdict.  But where a statute or the circumstances offer multiple options to the jury, the Court cannot under any circumstances speculate that the jury must have found a factual dispute proven.  It would be

a violation of constitutional due process and equal protection to sentence Kenneth Harrelson for a crime he did not commit or a fact associated with a conviction that are mere imagination by the prosecution.

The U.S. Sentencing Commission, Guidelines Manual, Annotated 2021 Chapter 6 - Sentencing Procedures, Plea Agreements, And Crime Victims' Rights explains:[1]

> Commentary
>
> Although lengthy sentencing hearings seldom should be necessary, ***disputes about sentencing factors must be resolved with care***.  When a dispute exists about any factor important to the sentencing determination, ***the court must ensure that the parties have an adequate opportunity to present relevant information.***  Written statements of counsel or affidavits of witnesses may be adequate under many circumstances.  <u>See, e.g.</u>, <u>United States v. Ibanez</u>, 924 F.2d 427 (2d Cir. 1991).  ***An evidentiary hearing may sometimes be the only reliable way to resolve disputed issues***.  <u>See, e.g.</u>, <u>United States v. Jimenez Martinez</u>, 83 F.3d 488, 494-95 (1st Cir. 1996) (finding error in district court's denial of defendant's motion for evidentiary hearing given questionable reliability of affidavit on which the district court relied at sentencing); <u>United States v. Roberts</u>, 14 F.3d 502, 521(10th Cir. 1993) (remanding because district court did not hold evidentiary hearing to address defendants' objections to drug quantity determination or make requisite findings of fact regarding drug quantity); <u>see also</u>, <u>United States v. Fatico</u>, 603 F.2d 1053, 1057 n.9 (2d Cir. 1979), <u>cert. denied</u>, 444 U.S. 1073 (1980).  The sentencing court must determine the appropriate procedure in light of the nature of the dispute, its relevance to the sentencing determination, and applicable case law.

*Id. (Bolded and italicized emphases added).*

Here, however, because of the prosecution's determination to find crowds collectively liable, this problem is vastly multiplied.  The fact that the prosecution wants to use a collectivist approach to criminal law alien to US. law creates enormous problems of asserted facts that have never been proven concerning Kenneth Harrelson.

---

[1]     **https://www.ussc.gov/guidelines/2021-guidelines-manual/annotated-2021-chapter-6**

The Government argues generically that:

> In determining the applicability of various specific offense
> characteristics, under §1B1.3 of the Guidelines, the Court should
> consider both the defendant's own acts or omissions and those whom the
> defendants aided, abetted, counseled, commanded, induced, procured, or
> willfully caused to commit this conduct (to include indicted and
> unindicted co-conspirators).

However, the jury did not find that Harrelson aided, abetted, counsel, commanded, induced, procured, or willfully caused _anyone_ to commit this conduct.  So §1B1.3 cannot apply.

## D.  WHAT THE COURT MAY NOT CONSIDER:  CROWD LIABILITY

Hundreds of people out of the crowd of 10,000 committed violence against people and things, battled with police, injured about 140 police officers, damaged federal property at the Capitol, and some even tried to break through the doors to the Senate and House chambers.

However, here, in this case, the security camera video – that is, the Government's own evidence – shows with unmistakable clarity and precision that most of those who intruded into the U.S. Capitol building clearly had no plans whatsoever, no sense of direction, no commonality, etc.  Some are viewed on the Government's own videos walking into the Capitol, turning around within seconds upon seeing there was nothing going on and leaving again in less than a minute. [2]

Crowds do not do things.  Individuals do things.  Crowds do not.

For example, the Government's Sentencing Memorandum on page 33 argues that

> "*First*, the defendants who were members of Stack One,

---

[2]      *See,* Capitol Security camera video, produced by USAO as 7029 USCS 02 Rotunda Door
Interior-2021-01-06_15h15min01s000ms.mp4 from USCP OPR Report 21-007, Exhibit 6 CCTV
Recordings, from production DT_DocID: USCP-003-00000167, produced 11/18/2021, in Global
Production DOJCB_008

> including Meggs, Harrelson, Watkins, Hackett, and
> Moerschel, in breaching the Capitol building, were part of a
> mob of rioters that caused injuries to Capitol Police officers
> guarding the doors to the building."

However, no one can be convicted or punished for being "part of a mob of rioters." That collectivist

approach ended in 1991 as the Berlin Wall fell. A certain government in Europe was tried for crimes

against humanity for punishing entire towns for the actions of a few. U.S. law requires proof of

individual liability, not being part of a crowd. U.S. law does not countenance collectivism:

> This is where things fall apart. Although both Governor DeSantis and
> Sheriff Williams argue that the phrase "willfully participate" is
> commonly understood, neither party offers an actual definition. ***Is it
> enough to stand passively near violence? What if you continue
> protesting when violence erupts? What if that protest merely involves
> standing with a sign while others fight around you? Does it depend on
> whether your sign expresses a message that is pro- or anti-law
> enforcement? What about filming the violence? What if you are in the
> process of leaving the disturbance and give a rioter a bottle of water to
> wash tear gas from their eyes?***
>
> The Governor would have this Court pencil in an exception for a person
> who merely "attend[s]" a violent demonstration but does not actively
> engage in violence or conduct that poses an imminent risk of injury or
> property damage. ECF No. 99 at 13. ***But the Governor offers no
> explanation or construction that limits when mere attendance becomes
> participation, except that a person must "intend to commit violence."
> Id***. But this ignores the plain text of the statute, which separates a person
> from an assembly of three or more persons sharing that intent. See *infra*.

*See, Order Issuing Injunction, The Dream Defenders, et al., v. Ron DeSantis*, Case No. 4:21-cv-
00191-MW-MAF*, ECF No. 137 (N.D. Fla. Sept. 9, 2021), (Mark E. Walker, Chief United States
District Judge), Page 53 *(injunction against anti-riot law in part because the legislation
appeared to criminalize the defendant's protest activities even if he did not participate in the
violent acts of others) 1:21-cv-191 consolidated case) (emphases added)*. And continuing:

> If this Court does not enjoin the statute's enforcement, ***the lawless
> actions of a few rogue individuals could effectively criminalize the
> protected speech of hundreds, if not thousands, of law-abiding
> Floridians***. This violates the First Amendment. See, e.g., *Bible Believers
> v. Wayne Cnty.*, Mich., 805 F.3d 228, 252 (6th Cir. 2015). Florida's
> interest in preventing public violence is beyond question, but when that
> interest collides with rights guaranteed by the First Amendment, the
> "government may regulate in the area only with narrow specificity."

>   *Button*, 371 U.S. at 433. Otherwise, those rights, which "are delicate and
>   vulnerable, as well as supremely precious in our society," may be
>   suffocated. Id. Section 870.01(2), through its ambiguity, chills speech
>   and eviscerates that essential breathing space. The law is overbroad.[27]
>
>   Accordingly, I conclude that Plaintiffs have established a substantial
>   likelihood of success on the merits as to their overbreadth claim.

*Id.,* at Page 77 *(emphases added).*

No U.S. citizen can be guilty of the "context" of what other people did.  The careless

transfer of the actions of "crowds" or "others" to specific defendants is an attack upon Due

Process and the burden of proof of proving the elements of a crime beyond a reasonable doubt.

"It is well-established that the determination of probable cause must be an individualized

matter." *Carr v. District of Columbia*, 565 F. Supp. 2d 94, 99 (D.C. Cir. 2009). See also *Barham*

*v. Ramsey*, 434 F.3d 565, 573 (D.C. Cir. 2006). "Where the standard is probable cause, a search

or seizure of a person must be supported by probable cause particularized with respect to that

person. This requirement cannot be undercut or avoided by simply pointing to the fact that

coincidentally there exists probable cause to search or seize another ...." *Ybarra v. Illinois*, 444

U.S. 85, 91, 100 (1979). "To demonstrate that plaintiffs' arrests were valid, therefore, the District

must show that it had probable cause to arrest each individual . . ." *Carr*, 565 F. Supp. 2d at 99.

**"The fact that rioting is a group offense does not eliminate the constitutional**

**requirement of particularized suspicion of guilt."** *Id. (emphasis added).*

This is true even if the "mob" has a generalized characterization of criminal behavior. *Carr*,

supra, at 99.  Thus, even if a "mob" that Mr. Rivera was in the proximity of engaged in violent

and destructive behavior, Mr. Rivera cannot be prosecuted merely for associating with them. See

*Washington Mobilization Committee v. Cullinane*, 566 F.2d 107 (D.C. Cir. 1977); *Dellums v.*

*Powell*, 566 F.2d 167 (D.C. Cir. 1977); *Barham v. Ramsey*, 434 F.3d 565 (D.C. Cir. 2006); *Carr*,

at 101.

### E.  WHAT THE COURT MAY NOT CONSIDER:  FIRST AMENDMENT CONSTITUTIONALLY PROTECTED ACTIVITY

Defendant Harrelson does not stand charged with Thought Crimes, unapproved thoughts, unauthorized political expressions, or socially undesirable political views.  He has not been called before the Orwellian Ministry of Truth.  Yet the Government asks this Court to punish Defendant for his exercise of free speech guaranteed to him by the First Amendment to the U.S. Constitution.

While it is undeniably false, the Government argues that

> "*Fifth*, some conspirators, including Harrelson and Dolan, while breaching the building and marching through the Rotunda, chanted "Treason!" regarding those Members of Congress who were supposed to be inside the Capitol building performing their constitutional duties to meet to certify the election results."

Its not clear at all that Harrelson chanted treason and Dolan tended to agree with whomever was questioning him.  But here the Government crosses the red line into violating the First Amendment to the U.S. Constitution.  There was no evidence or suggestion that anyone whom this might be addressed to could hear it or was anywhere in the vicinity.  Indeed, Members of Congress were long gone.  A pure expression of constitutionally protected speech, even though it never happened, is beyond the jurisdiction of any court to punish.

The Supreme Court's decision in *West Virginia State Board of Education v. Barnette,*  319 U.S. 624 (1943) illustrates the compelled speech doctrine.  In now hallowed language in our national laws, Justice Robert H. Jackson asserted,

> "If there is any fixed star in our constitutional constellation, it is that no official, high or petty, can prescribe what shall be orthodox in politics, nationalism, religion, or other matters of opinion or force

citizens to confess by word or act their faith therein."

Chief Justice John G. Roberts Jr. reiterated the essence of the compelled speech principle in

*Rumsfeld v. Forum for Academic and Institutional Rights, Inc*., 547 U.S. 47 (2006):

> "Some of this Court's leading First Amendment precedents have established the principle that freedom of speech prohibits the government from telling people what they must say."

This Court – even on a guilty plea – could not consider the race of a Defendant during

sentencing.  ___**Neither**___ can the Court consider the exercise of the Defendant's Constitutional rights

of free speech, petitioning the government for redress of grievances, free association, and travel.


## F.  "GUILTY VIEWING" OF THE CRIMES OF OTHERS

Apparently generated by a misunderstanding, the Government has become enamored of

accusing January 6 Defendants of what Defendants' counsel will call "guilty viewing" or "guilty

watching" of other people committing a crime.

On April 6, 2022, the Honorable District Court Judge Trevor McFadden provided a very

interesting split decision, including in *United States v. Matthew Martin*, Case No. 1:21-cr-00394,

in this District.  Judge McFadden found Matthew Martin not guilty because the U.S. Capitol

Police had not given notice to the public of a restricted area under 18 U.S.C. 1752(a)(1) (that is,

notice that had been posted on flimsy 11 by 14 inch paper was no longer visible after efforts by

some to remove barricades) and police officers did not express any discouragement of Martin

entering the Capitol.

But McFadden found another Defendant had crawled over walls and other obstructions to

enter the Capitol.  Thus, Judge McFadden found, the second co-Defendant did not need to see

signs posted to realize that he was not supposed to be entering the building, if he had to crawl

over walls to do it.   The split decision strongly reveals the legal test that is important.

However, the Government has stretched or misunderstood Judge McFadden's rulings. It was not that police were present. It was not that a few were committing crimes. One is perfectly free to stand across the street and watch crooks robbing a liquor store. McFadden did not find any duty to depart. It was not about hearing a fire alarm. Anyone who has attended school knows that someone can falsely pull a fire alarm handle to be disruptive when there is no actual emergency.

Seeing guilt does not create guilt. Seeing people brawling would lead a reasonable person to conclude that those people will be arrested and the remainder of the crowd may continue to demonstrate. The truth is Harrelson after following behind hundreds of protesters to the steps and crossing no barriers, Harrelson did stand to be noticed and was in fact noticed by Oath Keepers dressed unlike him and traveling in a stack unlike him. Perhaps this explains the jury verdict. He was told by two individuals for unknown motives that police needed help up above by the Columbus Doors. Harrelson went, following Isaacs and the Oath Keepers also went lateral to Harrelson.

## G. RESTITUTION NOT AVAILABLE

An order of restitution is not available because the Defendant did not damage any property or cause any other loss:

**18 U.S. Code § 3663 - Order of restitution** requires (in relevant part):

**(a)**
                    * * *
         **(B)**
         **(i)**The court, in determining whether to order restitution under this section, shall consider—
                    **(I)**    the amount of the loss sustained by each victim as a result of the offense; and
                         * * *

That is, restitution is only authorized for a "loss" that is "as a result of the offense."

However, Harrelson did not damage any property nor harm anyone.

The Court is not authorized to order restitution where Harrelson committing "the offense" of which he was found guilty did not cause any "loss." Certainly, the Government did not introduce any evidence of any loss. Therefore, although the Court may be authorized to order restitution in general principle, the applicable amount in this case totals $0.00. [3]

## H. JURY VERDICT WAS FOR LESSER-INCLUDED OFFENSE

Recall that there is only one Government as the Complainant in all January 6, 2021 cases, and only one U.S. Attorney's office representing the Government.

The Government has clarified or developed a misdemeanor version of 18 U.S.C. 1512(c)(2). In the appeal of *United States v. Jesus Rivera*, Case No. 1:21-cr-00060-CKK-1, Appellee's Brief, Record No. on Appeal. 22-3088, the Government argues that the obstruction of the Joint Session of Congress on January 6, 2021, is the "disruptive conduct" element of

> Violent Entry and Disorderly Conduct in a Capitol Building
> 40 U.S.C. § 5104(e)(2)(D)  *(emphasis added).*

>> (2)VIOLENT ENTRY AND DISORDERLY CONDUCT.—An individual or group of individuals may not willfully and knowingly—
>>                    * * *
>> **(D)** utter loud, threatening, or abusive language, or engage in disorderly or ***disruptive conduct***, at any place in the Grounds or in any of the Capitol Buildings with the intent to impede, disrupt, or disturb the orderly conduct of a session of Congress or either House of Congress, or the orderly conduct in that building of a hearing before, or any deliberations of, a committee of Congress or either House of Congress

---

[3]    Again, the USAO analyzes for every defendant restitution as if every defendant were guilty of every act committed by anyone else, without regard to actual individual guilt. Restitution by person A cannot mean paying for harm caused by person B. The collectivism of the current DoJ is not permissible within the law.

And:

> Disorderly and Disruptive Conduct in a Restricted Building
> 18 U.S.C. § 1752(a)(2) *(emphases added)*.

> **(a)**Whoever—
>
>               * * *
>
> **(2)** ***knowingly*** and with intent to impede or disrupt the orderly conduct of Government business or official functions, engages in disorderly or ***disruptive conduct*** in, or within such proximity to, any restricted building or grounds when, or so that, such conduct, in fact, impedes or disrupts the orderly conduct of Government business or official functions;or attempts or conspires to do so, shall be punished as provided in subsection (b).
>
>               * * *

Normally one would retort that the jury was not instructed on treating 40 U.S.C. § 5104(e)(2)(D) and 18 U.S.C. § 1752(a)(2) as lesser-included misdemeanor versions of 18 U.S.C. § 1512(c)(2).  Oh, but the jury was.

### Possible Punishment Not Relevant

> The question of possible punishment of the defendant in the event of a conviction is not a concern of yours and should not enter into or influence your deliberations in any way. The duty of imposing sentence in the event of a conviction rests exclusively with me. Your verdict should be based solely on the evidence in this case, and you should not consider the matter of punishment at all.

Therefore the jury was instructed to find the facts relevant to "obstruction of an official proceeding" – not to consider whether that might be a felony or a misdemeanor.

Because 18 U.S.C. 1512(c)(2) is vague, generic, problematic, and doubtful, whereas 40 U.S.C. § 5104(e)(2)(D) and 18 U.S.C. § 1752(a)(2) are specific and clearly applicable, they control over the vague broad brush strokes of 18 U.S.C. 1512(c)(2).

Therefore, Harrelson was found guilty of a misdemeanor under U.S.C. § 5104(e)(2)(D) or 18 U.S.C. § 1752(a)(2), at least for the purposes of sentencing (the severity of the context).

The Government cannot argue that obstructing the Joint Session of Congress is a misdemeanor in *United States v. Jesus Rivera* but a felony here in terms of severity. The Government is estopped from arguing that Kenneth Harrelson's non-violent presence for a few minutes in the Capitol at 2:40 PM

### III. CIRCUMSTANCES OF THE EVENTS

Harrelson has spent 789 days in confinement, 540 days in the DC prison. This included one stint in "the hole" that temporarily "broke" him, and multiple medical isolation tours that required mental and physical resilience. He has had an unblemished disciplinary record while he has been detained. Since being detained, Harrelson has become an avid reader of books, never having engaged in reading prior to his actions in this devastating chapter that destroyed his life. Harrelson continues to be apathetic and indifferent to politics and this experience has accentuated that disposition. His reading choices are historical fiction and military history. Prior to his arrest, Ken Harrelson was not on social media[4] and he did not have cable television. He did very little reading and was not the kind of guy who engaged in forms of expression that most or certainly some engaged in. He welded, fished, tinkered, worked on reconditioning a muscle car and rode a Harley that he used to enjoy riding with his wife. It was a simple life, in retrospect a somewhat isolated and quiet life and he recognizes that if had been more expressive and open—less passive, more watchful and alert, he would probably be home fishing right now. He also recognizes he made other choices and he holds himself responsible for those choices.

---

[4] Absent a defunct account on Linkedin—few welders are on Linkedin.

Harrelson has no prior or subsequent criminal record.[5] Harrelson is an honorably discharged Army Sergeant (PSR, ¶168). He is a 100%, service-connected disabled veteran with a progressively debilitating back and shoulder injury. He also has diagnosed PTSD from having been the first command responder to when his bunk mate got crushed and killed between two armored vehicles.

Prior to his decision on January 3, 2021 to attend January 6 events as a volunteer escort, Harrelson was a productive member of society. He LOVED welding and was extremely proud of working for a number of sub-contractors to Space-X and fondly recalls meeting Elon Musk on multiple occasions where Musk exhibited an easy manner and collegiality with Harrelson and other team members. He ranks himself in the top 10% of welders in terms of skills and although it strikes undersigned counsel as unusual, he actually dreams of one day being able to weld again.

He has a daughter who is in Junior ROTC and he has two sons, the oldest of whom he mentored into a career with the military. Perhaps his proudest sense of accomplishment is that the mentoring he gave his son prior to his arrest "held up" and resulted in his son entering basic Army Basic Training in July, 2022. On December 4, 2023, his son graduated from Infantry Training School at Fort Benning. Ken is so proud that his son could carry out their combined mission and he clings to this success as a point of great pride.[6] In spite of assertions that have

---

[5] PTS search refers to three dismissed actions (PSR, ¶142-144) and a marijuana "no action" in-fraction (PSR, ¶145) that is most likely mistaken identity because it occurred after Harrelson had left the military in a state he never visited.

[6] One of the most profound acts of kindness undersigned counsel in some time has heard about was how Fort Benning lifted its usual rules permitting Army alumni to affix the blue cord on a graduate's shoulder by permitting Ken's wife Angel to do the honors. the graduate with a blue cord, the base special consideration to Mrs. Harrelson who was permitted to stand in for Ken.

been made about Ken Harrelson he remains a loyal American, to the country and, of course, to

its government. He never felt any other way. Most certainly this chapter has had no effect on

that.  He is completely opposed to any violence, coercion in any form, most certainly by him or

anyone he is associated with imposing their will on anyone let alone elected representatives of

the people. He has accepted his fate because regardless of the circumstances some of which are

mitigating, because he did go inside the building and he believes its only him that bears

responsibility for this.  Not the government, not any member of the crowd, not any other Oath

Keeper.  He is responsible.  He accepts this responsibility, which has made the time served more

bearable because he accepts his fate and respects this Court's prerogative to determine what is

appropriate now in his case. Harrelson faces crushing liability in regard to a civil suit filed by the

District of Columbia. The Harrelson's are essentially broke, but certainly "under water" under

any reasonable analysis. (PSR, ¶181-184).

By way of summary, on January 6, 2021, Harrelson and Jason Dolan attended the "Stop

the Steal" rally in the District of Columbia to provide security as a member of the Oath Keepers.

Harrelson agreed to go on the early evening of January 3, 2021 and he received a text from

Meggs announcing that he was ground team lead.  The full scope of his knowledge at that time

was that the Oath Keepers were providing volunteer security and, consistent with police at all

security events, they would have legally stored weapons in the event they were required to

support law enforcement.

The Government made much of Harrelson's presence on the November 9, 2020

conference call, but this was the 40th anniversary of his birth and he was celebrating with his

---

Ken views this as one of his greatest accomplishments even though he has not been able to see
his eldest son of any of their children in person or over zoom since he was incarcerated.

wife. He did hear some of what was discussed, but alas, nothing about the call suggested to him that anyone had some illegal or illicit purpose. Had he developed that understanding from the call he would have actively opposed such a crazed scheme and/or reported them to law enforcement.

As it turned out, everything on January 5th was horribly disorganized and it turned out that Michael Green, who had far more experience than Harrelson, was in charge. Harrelson was upset at the demotion and disorganization as became evidenced while performing "gray security" on January 5th. Harrelson threatened to leave when, as an added insult, no one had thought to even reserve him a room. Sadly, an unknown stranger heard his grousing and provided him with a room.

Harrelson and Dolan resisted efforts to form a security meeting on the night of the 5th and instead purchased two six packs and got drunk. The next morning Harrelson and Dolan woke up late, after the remainder of the group was already at the ellipse, and Harrelson was informed by Meggs that the Secret Service did not want them wearing personal protective equipment (PPE) while working security behind the barriers. Accordingly, Harrelson and Dolan went over to the ellipse late and without their PPE.

The government disputes that the security detail was legitimate, arguing to the jury in summation that the event the Oath Keepers were going to escort VIPs from the Ellipse to was, "not real," and "was never actually going to happen." Tr. at 10325:7-14 (Nov. 21, 2022), but in trial this Court (and the jury) was able to observe Harrelson and other Oath Keepers forming up the movement of VIP's[7] for the trip to the Senate Egg for a permitted event (where Harrelson can be seen to rarely if ever to even look towards the Jumbotron showing President Trump's speech).

---

[7] https://rumble.com/v27a5ua-oath-keepers-from-the-ellipse-to-the-senate-egg.html

The jury was able to observe Harrelson over most of the route taken by the last security detail and could observe and evaluate Harrelson's body language and easy manner as his body posture shifted positions to scan for threats while his head was "on a swivel."

The jury observed Harrelson enter the Senate egg with a straggler VIP that Harrelson would not abandon.[8]  The jury watched as the huddle slowly came to realize that a group had pushed through in the Northeast with then unmistakable body language by Harrelson and Dolan of not only surprise, but mystification as to what they were observing as the VIP's walked directly towards the stairs and Harrelson and Dolan fanned out to corral the protectees, hesitated, filmed and then eventually tried in vain to follow and hunt down their protectees.

Undoubtedly, the jury evaluated Harrelson's demeanor and passive response: "Huh?" to Dolan's unenthusiastic comment: "I think we should go up there"[9]  Ken Harrelson had no plan of insurrection, attacking Congress, trespassing, "taking to the steps and protesting" or disrupting the College regarding which he had not the vaguest notion.  These issues were not in his wildest imagination and unclear duties and failure to clearly get a visual "make" on the protectees that outnumbered him, combined in a way that sadly made him make the affirmative decision to follow. Unclear responsibilities also led him to top level on the steps where he could be seen. At 2:25, the door had already been opened once with Harrelson and Dolan down below on the steps without any intention of going in.[10]

---

[8] **https://rumble.com/v26ypv6-158-pm-january-6-2021.html**
[9] https://rumble.com/v27ahoe-ken-harrelson-leads-attack-on-the-capitol.html
[10] Unbeknownst to them, two of their protectees did go in: Dr. Simone Gold and Jonathan Strand.

Just prior to singing the National Anthem as the Oath Keepers approached,[11] a report that police needed help up above by the Columbus Doors prompted Harrelson to investigate. Forty seconds later, the doors opened from the inside and the Oath Keepers are swept in.

When Harrelson entered the Columbus Doors, Harrelson is holding up his camera filming.[12] You hear someone chanting behind him "treason" and you hear Harrelson state "this is our fucking house" in a voice that is clearly recognizable as Harrelson's. Harrelson is aware that he is filming at that point as his camera had been recording since he was outside. At 1:29 he attempted unsuccessfully to shut off the video on his phone as he put it down to his side. With the camera still filming, he attempts to turn the camera on again at 1:38. At 1:58 he is once again unsuccessful in turning the camera off and it continues recording as he puts it to his side. At 2:02 you see him try to begin filming again with his finger but the camera was already filming. So while Harrelson might have expected to find three thumbnails on his phone reflecting three short clips (one showing the outside and two showing the inside), he only had one long clip with a thumbnail that showed the clip's beginning outside the Capitol. Harrelson was unaware of this when he testified in his state detention hearing and, thinking his camera had malfunctioned (which it did although not in the way he understood), he testified that he did not film inside the Capitol. This was technically true. He did not know that he had captured the interior of the Capitol at the end of the long film he had begun outside the Capitol.

Another misconception the Government has is as follows: Harrelson did not hide or destroy the semiautomatic rifle and case that he transported from Florida to the QRF hotel and

---

[11] **https://rumble.com/v26zfn8-oath-keepers-from-the-steps-to-entry-through-the-columbus-doors.html**

[12] **https://rumble.com/v2msu9g-ken-harrelson-enters-capitol.html**

back. The Harrelson's had independently begun a gun trust and he was known to go to ranges with friends where afterward they might store their weapons properly in someone's safe prior to going to a bar or not going directly home. Harrelson had temporarily swapped weapons so he could put a special paint job on his friend's weapon. This was one of the weapons that the FBI recovered from the Harrelson house and did not seize. If Harrelson was hiding weapons from a search, he would have his all his weapons.

It's true that on February 4, 2021, after the news of other co-conspirators' arrests were made public, Harrelson asked Meggs, "Is there anyway we can clear out the messages in our chats, I don't think it would be a bad idea, clear out all the talk of hiding the tools and shit," and Meggs responded by suggesting they could delete old chats and start new ones. Gov. Ex. 9086. But this was in reference to a new awareness about people saying crazy things on chat groups and Harrelson (belatedly) was realizing that he might have an obligation as a moderator. Biden's election had started the traditional gush of prognostications and dire warnings about mass confis-cation of hundreds of millions of guns and while these discussions were intended to be humorous and brash, they had nothing to do with Jan6.

The Government presented no evidence of obstruction other than pregnant implications from this text but in early February when this text was written, Harrelson earnestly believed he was in the clear and was not a subject of investigation because he distinguished his conduct from those that had been arrested. In fact, legal advice he received suggested that the worst that could happen is he would be fined for trespassing.  So he had no motive to hide guns or erase texts. The evidence showed absence on social media and that he was on very few chats.

This reference were in group chats where gun owners were engaged in the great American pas-

time of speculating how a new gun control president is going to confiscate hundreds of millions

of guns in the hands of American gun owners.

## IV. CORRECT CALCULATION OF POINT

### A.  NO CRIMINAL HISTORY APPLIES

Under the U.S. Sentencing Guidelines, criminal history does sunset, with the expiration

times depending upon the seriousness of the conviction.

Here, the Probation Office has still not figured out that its procedures of including

matters beyond the time limits is incorrect.  However, Defendant Harrelson has no convictions

and therefore the PSI is correct that his criminal history points are 0.

> Criminal history is governed by the Sentencing Guidelines is governed by
> §4A1.2.    Definitions and Instructions for Computing Criminal History
>
> (a)    Prior Sentence
>
> * * *
>
> (e)    Applicable Time Period
>
> (1)    Any prior sentence of imprisonment exceeding one
> year and one month that was imposed within fifteen years of
> the defendant's commencement of the instant offense is
> counted. Also count any prior sentence of imprisonment
> exceeding one year and one month, whenever imposed, that
> resulted in the defendant being incarcerated during any part
> of such fifteen-year period.
>
> * * *
>
> (2)    Any other prior sentence that was imposed within ten
> years of the defendant's commencement of the instant
> offense is counted.
>
> * * *

### B.  POINTS FOR "BASE" OFFENSE

The PSI and the Government analogizes 18 U.S.C. 1512(c)(2) as the same category as obstruction of justice.  Under Sentencing Guidelines USSG §2J1.2(a) the Government asks for an application of 14 points.

### C.  SPECIFIC OFFENSE CHARACTERISTICS:  PROPERTY DAMAGE

The PSI and the Government seeks to add 8 points based on it collectivist approach of punishing Harrelson for the offenses of others.  The PSI argues in paragraph 128:

> The offense involved causing or threatening physical injury
> to a person, or property damage, in order to obstruct the
> administration of justice (to wit: the conspirators, in
> breaching the Capitol building, were part of a mob of rioters
> that caused damage to the Capitol Building's East Rotunda
> Doors and Columbus Doors, as well as caused injuries to
> Capitol Police officers guarding the doors to the building.

However, the factual basis for this argument is illegal and flawed:  "to wit: the conspirators, in breaching the Capitol building, were part of a mob of rioters."  In other words, the Government asks to punish Harrelson for what other people did.  This collectivist mentality is not the law in the United States.

The Government has been forced to admit that Harrelson did not damage any property. Even if it were not wildly untrue that Harrelson came into contact with any law enforcement officer, there were no injuries resulting. Harrelson continues to believe that he intended to come to the aid of and did in fact aid Officer Harry Dunn.[13] The video introduced at trial is consistent with this.

Since they can't get there from here, the Government is forced to engage in its collectivist

---

[13] **https://rumble.com/v28l7qg-officer-harry-dunn-out-of-control-ken-harrelson-and-oath-keepers-create-a-s.html**

mentality:  Well *someone* did.  So let's just blame the nearest person we can grab off a street

corner.  Even the Government's own arguments are an admission that they are talking about

what other people did – not Harrelson.

The photographic evidence is clear that the East Rotunda Doors were damaged before

Harrelson arrived at the top of the East central stairs of the Capitol.  Someone did it.  But it

wasn't Harrelson and there is no evidence that he was anywhere near the door when it was

opened by provocateurs at 2:25p.m.

The Government argues for its collectivist punishment in the middle of paragraph 128:

> Conspirators assaulted and pushed against a line of riot
> officers in the Rotunda in an effort to breach the Capitol
> building …

So not Harrelson.  Just someone.  Recall that Harrelson was found not guilty of any

conspiracy.  Paragraph 128 does not say these Defendants are conspirators. It is even more vague

than that.  But Harrelson is not a conspirator and its reasonable to think that the jury found that

he was on an active security detail, he had not entered the building during the first opening, he

was not a member of the stack, dressing in street clothes, that he had less culpability.

Therefore, the 8 points sought for "Specific Offense Characteristics"

must be denied.

### B.  SPECIFIC OFFENSE CHARACTERISTICS:
###     OBSTRUCTION OF JUSTICE

In paragraph 129, the PSI and the Government seek a redundant double-counting of the

same conduct as the base offense.  The 3 points must be deleted as they are merely the same

offense as the base offense.  There is no distinction between the additional 3 points sought and

the underlying base offense.  The Government is merely double-dipping or double-counting.

Once again, there has still been no evidence provided that any of the demonstrators, much less Harrelson, obstructed the Joint Session of Congress. On the contrary, in clear violation of *Brady v. Maryland* the U.S. Capitol Police has furiously attempted to conceal this information. This trial judge responded to the request of Kelly Meggs for a subpoena to the USCP by ordering the USAO to advise the USCP of its obligation to provide this information. On January 20, 2022, the USAO filed a quite extensive notice of the USCP's obligations under *Brady* to provide this information. We are still waiting. But we are appealing.

Why is the USCP so intensely determined to hide the truth? What is so worth a *Brady* violation and the reversal of this entire case by the U.S. Supreme Court?

So there is no evidence whatsoever that Harrelson obstructed the Joint Session of Congress that began to recess at 2:13 PM according to then Parliamentarian Thomas Wickham in his October 19, 2022, testimony. And of course a decisional process would have to precede that recess. Speculation is not evidence. Conjecture is not evidence.

The Government relies upon decisions by the Court that the jury could have concluded X or Y. No, it could not. A lawless jury is not a jury. If there was no competent evidence by which the jury could reach a verdict, the jury verdict is invalid.

It is no answer to speculate and engage in conjecture about how long it might take law enforcement to sweep the Capitol building. Mere editorializing is not sufficient. The Government would have to qualify and present an expert witness – not merely a distinguished official, but an actual expert witness – as to how long it should have taken and how Harrelson's presence added even 1 second to that process. It is still just one building. The number of rooms would not change. The time required to look in each room would not change. Nothing would change. How long should it take? How did that process change, if at all?

So the Government argues that it is not bound by only the evidence presented at trial. Perhaps an evidentiary hearing would be appropriate in this case to establish that Harrelson had a material effect on this.

### C.  SPECIFIC OFFENSE CHARACTERISTICS:  EXTENSIVE IN SCOPE

The PSI and Government further seek an additional 2 points in paragraph 130 because

> The offense was otherwise extensive in scope, planning, or preparation, (to wit: the conspirators began planning in November 2020 and continued through January 2021. More than 20 members of the conspiracy communicated with each other using sophisticated, encrypted messages, and coordinated with one another to travel across the country from Arizona, Texas, Alabama, Georgia, Florida, North Carolina, Virginia, and elsewhere into the Washington, DC area.

However, Harrelson was found not guilty of any conspiracy.  He is not a conspirator.

And this is a further example of collectivist punishment alien to U.S. law.

More to the point, however, the evidence shows that Kenneth Harrelson only joined the plans to go to Washington, D.C. on the evening of January 3, 2021 and that was to provide security details. Therefore, the very rationale described for the additional 2 points is not applicable to Harrelson.  This is another example of the mistake of going off of the indictments not what was proven and what was debunked during trial.  The rationale for the additional 2 points is explicitly that "conspirators began planning in November 2020 and continued through January 2021."  Yet Harrelson was only included on January 3, 2021.  Therefore, these 2 points must be deleted.

Again, Harrelson was found not guilty of any conspiracy of this type indicating that the jury did not find that he had been an extensive participant in months-long extensive offense.

### D.  ADJUSTMENT FOR ROLE IN THE OFFENSE:

As another example of the mistake of a PSI and the Government's Sentencing

Memorandum based upon the indictment as a mere allegation rather than from the facts as debunked or proven, the PSI and Government would seek to add 3 points for the clearly false claim that

> The defendant was manager or supervisor of a criminal activity that in-
> volved five or more participants or was otherwise extensive. The defend-
> ant was part of defendants Meggs' Florida leadership team, and he ar-
> ranged and led multiple planning calls. Because the defendant was the
> "ground team leader" for the conspiracy, three levels are added.

Not a word of that is true. But what counts here is that we know it is not true.

It is one thing for the Government to try to argue that facts outside of the trial can be considered. ***The question is, however, arguing "facts" <u>which we know to be false because of the trial</u>.*** The Government may look beyond the trial. But it may not stand on factual assertions known to be false.

Kelly Meggs essentially wrote one text message in which he made a typo and mentioned Harrelson when he meant Greene, who was appointed by Stewart Rhodes as the "ground team leader" since Kelly Meggs had no authority to appoint "the ground team leader" for the event. Stewart Rhodes did. Rhodes appointed Michael Greene of Indiana.

We know that there are no emails or activities or text messages reflecting Harrelson acting as "the ground team leader" – only one erroneous message, with nothing showing that it was true.

We know it is false that Harrelson "was part of defendants Meggs' Florida leadership team." First, Meggs was not a leader in Florida until around December 26, 2020. Second, Harrelson did not decide to attend until January 3, 2021. So Harrelson was not part of Meggs Florida leadership team which in fact Meggs did not have in any event.

The 3 points under this category must be deleted.

### E.  ALTERNATIVE PENALITIES

The Court is authorized to substitute community service, a term of probation, and/or home detention of no more than the maximum allowed for incarceration.

### F.  ALTERNATIVE PENALITIES

The Court is authorized to substitute community service, a term of probation, and/or home detention of no more than the maximum allowed for incarceration.

### G.  FINE

The Court is authorized to impose a fine.  Harrelson has no assets to speak of and has lost his military payments and retirement.

### H.  RECOMMENDED SENTENCING UNDER 18 USC 3553(a) FACTORS

The Court will consider the factors under 18 U.S.C.§ 3553(a) in crafting a sentence.  As typically asserted by the USAO, these factors of that statute include *(emphasis added):*

> (1)   the nature and circumstances **_of the offense_** and the history and characteristics of the defendant;
>
> (2)  the need for the sentence imposed—
>
>> (A)    to reflect the seriousness _of the offense_, to promote respect for the law, and to provide just punishment for the offense;
>> (B)    to afford adequate deterrence to criminal conduct;
>> (C)     to protect the public from further crimes of the defendant; and
>> (D)    to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

Yet "_the offense_" referred to in 18 U.S.C.§ 3553(a) here is only Count III, Count IV, and Count IX.  Harrelson cannot be made to pay restitution for what other people did.

But the USAO consistently wants to analyze "the nature and circumstances" of offenses which Defendant Harrelson did not commit, is not guilty of, and which form no part of his

conviction.  The USAO wants the Court to sentence _other people_ who are not before this Court

in this case and smuggle into this case the misconduct of _other people_ not before the Court in this

case.  The USAO consistently argues to sentence any given Defendant as if he had committed

other crimes, that other people committed.  The USAO cannot "smuggle" irrelevant issues into

the case, of which the Defendant is not guilty and never will be guilty

## V.  ARGUMENT[14]

Here, the Defendants in this case have gone through trial and faced a jury verdict.

But the Defendants are awaiting sentencing, in which the U.S. Probation Office's

Presentence Investigation Report has raised many dozens of factual assertions not drawn from

any evidence presented in the trial, but drawn instead from the imaginative and unsupportive

allegations of the prosecution.  That is, while normally the fact of conviction on certain Counts

would be all that is considered, here the argument in sentencing is primarily

All of the Defendants also filed a Joint Rule 29 Motion for Judgment of Acquittal

Pursuant to Rule 29 jointly in this case at Dkt. # 432 on December 23, 2022.

The Defendants' Joint Motion briefly presents the legal defects of Count IV and Count

IX of the Eighth Superseding Indictment Filed on June 22, 2022, at Dkt. # 167.

Harrelson also presented legal defects of the case against him in his CONSOLIDATED

---

[14]     Believing that it will make things more clear in this motion, largely because the legal
standards for disqualification or recusal are so well-known and standard, Defendant here makes
an exception and places a "Governing Law" section at the end of this motion instead of in the
usual order.  In that way, the issues in play will be more clear before the reader may need to refer
to the Governing Law details at the end.

POST-TRIAL MOTIONS OF DEFENDANT HARRELSON PURSUANT TO F.R.Cr.P. 29 & 33, filed at Dkt. # 424 on December 13, 2022.

However, Count IX is specifically about Kenneth Harrelson alone.  Each of the Counts 7 through 10 present the same allegation -- Tampering with Documents or Proceedings pursuant to 18 U.S.C. § 1512(c)(1) -- against each of the individual Defendants one at a time.

Therefore, it is appropriate for Kenneth Harrelson to provide a more detailed REPLY of his own to Count IX which is specifically an allegation against himself alone and no one else.

Technically, Harrelson has standing to challenge those Counts for which the jury found him guilty, but many factors and failings of the Government have cross-cutting impacts on the evidence and analysis of various Counts including Counts affecting other Defendants as well as those Counts directly affecting only Harrelson.  The presentation of evidence, argument, and legal decisions and motions throughout this case were not neatly cabined to only specific Counts.

Defendant Harrelson was found guilty by the jury in the case of *USA v. Stewart Rhodes,* et al., Criminal Case No. 1:22-cr-00015, of (only)

a) COUNT III:  Obstruction of official proceeding in violation of 18 U.S.C. §1512 (c)(2)[15]

b) COUNT IV:  Conspiracy to Prevent an Officer from Discharging Any Duties in violation of 18 U.S.C. § 372

c) COUNT IX:  Tampering with Documents or Proceedings and Aiding and Abetting in violation of 18 U.S.C. § 1512(c)(1)

## VI. GOVERNING LAW:  *BRADY* and Other Obligations

---

[15]     Though not of a conspiracy to obstruct the official proceeding.

Rule 29 of the Federal Rules of Criminal Procedure and *Brady v. Maryland* jurisprudence are set

forth in the original Motion and Memorandum of Law.

Therefore, the Court is urged to not skip over the "Governing Law" section of the Motion as

being mere boilerplate.


## VII.    ARGUMENT

### A.    HARRELSON WAS ACCUSED UNDER COUNT IX:

#### COUNT NINE
(18 U.S.C. 1512(c)(1))
(Tampering with Documents or Proceedings)


153.  Paragraphs 1 through 13, 18 through 134, and 146 of

this Indictment are re-alleged and incorporated a though set forth

herein.

154.  Sometime on or after January 6, 2021, HARRELSON

deleted from his cellular telephone certain media, files and

communications that showed his involvement in the conduct

alleged herein.

155.  Between on or about January 6, 2021, and on or about

March 10, 2021, in the District of Columbia and elsewhere, the

defendant

**KENNETH HARRELSON**

did corruptly alter, destroy, mutilate and conceal a record,

document and other object, and attempted to do so with the intent

to impair its integrity and availability for use in an official

proceeding, that is the Grand Jury investigation into the attack on

the Capitol on January 6, 2021.

(In violation of Title 18, United States Code, Section 1512(c)(1))

## B.    NO EVIDENCE WAS PRESENTED TO ESTABLISH COUNT IX BEYOND A REASONABLE DOUBT

However, the Government did not present any evidence sufficient to find Harrelson guilty

beyond a reasonable doubt.  Indeed, the Government did not present any evidence at all of any

violation of Count IX by Harrelson.  The Government offered nothing but speculation,

conjecture, and guesses.

- The Government never attempted to prove that Harrelson ever had any "record, document or other object" that "showed his involvement in the conduct alleged herein" on his cellular phone or anywhere else.

- The Government never attempted to prove the existence at any time of any "certain media, files and communications that showed his involvement in the conduct alleged herein."

- The Government never attempted to prove that any "certain media, files and communications that showed his involvement in the conduct alleged herein" were ever removed from Harrelson's cellular telephone or elsewhere.

- The Government never attempted to prove that the Defendant committed any such act "with the intent to impair its integrity and availability for use in an official proceeding,"

- Harrelson's cellular telephone is a hand-held portable computing device of extremely small, limited storage capacity. That is, more data cannot be stored and

maintained without deleting data no longer needed or held for use.

- Thus, the intent of any owner of a cellular telephone to clear out older data to make room for more, newer data to continue using the cellular phone is presumptively for the intent of normal use of the cellular phone.

- The Government made no attempt to prove that Harrelson deleted any data from his cellular telephone for any purpose other than to make room for the smooth and continued operation of his cellular telephone.

- Furthermore, some communication software ("apps") generate an automatic tone sound every time a message is posted to a group discussion. If the number of messages and members is large, this would lead to a constant pinging sound all day and all night. Thus, the Government made no attempt to prove that there was no other reason such as the constant noise of certain apps to delete chat groups or entire software apps from the cellular telephone.

- In other words, the Government offers only guesses, imagination, and speculation.

- The only thing that the Government attempted to show was a text message from Harrelson about not keeping some information. Unfortunately for the prosecution, however, Harrelson's message is phrased more as a question about what would be advisable not a direction that something be done or of his own intent to act. The message is also non-specific as to what Harrelson is talking about. The Government must rely on guessing to try to make the message related to the events of January 6, 2021.

To violate § 1512(c)(1), "[a] proceeding must at least be 'foreseen,' such that the defendant has in contemplation *some particular official proceeding* in which the destroyed evidence might be

material." *United States v. Simpson*, 741 F.3d 539, 552 (5th Cir. 2014) (emphasis added); *accord*

*United States v. Petruk*, 781 F.3d 438, 445 (8th Cir. 2015). The government must show that the

defendants intended "actions were likely to affect a[n] [official] proceeding" to prove beyond a

reasonable doubt that he "had the requisite intent to obstruct." *United States v. Friske*, 640 F.3d

1288, 1293 (11th Cir. 2011).

As the Joint Motion explains "The government's argument as to these defendants' alleged

unlawful intent is circular, i.e., because the government believes the defendants engaged in

felonies on January 6, therefore, their actions in relation to Facebook must have been motivated

to cover up his felonious conduct. In reality any person in the defendants' shoes would not

reasonably believe that felony charges—which are the subject of grand jury proceedings—would

be lodged against him. In reality, the evidence as against these defendants would not give rise to

the assumption that they should anticipate being charged with a crime or, at most, being charged

with anything more than misdemeanor trespassing, which would not be the subject of a grand

jury proceeding."

In short, there was insufficient evidence that these defendants foresaw a grand jury proceeding

into their conduct or that their actions would likely affect such a proceeding.


### C.     DOCTRINE OF CORPUS DELICTI

Corpus Delecti under Federal criminal law requires that a prosecution cannot rely only on

a statement or a confession without more to obtain a conviction. The corpus delicti – the actual

facts constituting the offense – must be corroborated by evidence beyond merely the defendant's

(alleged) confession alone.  Specifically, evidence must be proven sufficient to establish beyond

a reasonable doubt that the crime actually occurred and the defendant is culpable, not merely that

a person has made a comment by itself.

> … we feel bound upon a subject touching so materially liberty, and in
> many cases life itself, and especially in the criminal law where justice
> requires equality of treatment in respect of trial procedure and proof, to
> give weight to the findings of the National Commission, and to follow in
> adopting a rule for this jurisdiction the rule of the great majority of the
> courts in the United States *that there can be no conviction of an accused*
> *in a criminal case upon an uncorroborated confession*, and the further
> rule, represented by what we think is the weight of authority and the
> better view in the Federal courts, that *such corroboration is not sufficient*
> *if it tends merely to support the confession*, without also embracing
> substantial evidence of the corpus delicti and the whole thereof. . . .

*Forte v. United States*, 94 F.2d 236, 240, 127 A.L.R. 1120 (D.C. Cir. 1937) *(emphases added)*.

Thus, Harrelson's vague message even if it were clear cannot be used to convict him of the crime charged under Count IX. The Government must prove the crime beyond a reasonable doubt as to the fundamental actions of the crime charged. The Government did not do this nor attempt it. Specifically, again, where there any documents or records at any time? Were any documents or records ever deleted? Were any documents or records deleted with the requisite intent to make them unavailable for an official proceeding? None of those crucial facts of the *corpus delicti* were even touched upon by the Government.

###    D.    COUNT IV IS DUPLITIOUS OF COUNT III AND NOT VALID

Defendant Harrelson was also charged under Count IV of the Eighth Superseding Indictment issued by the Grand Jury on June 22, 2022, (though labeled merely as "Indictment" after the case was split from 1:21-cr-00028 into 1:22-cr-00015), with a violation of "Conspiracy to Prevent an Officer from Discharging any Duties" in violation of 18 U.S.C. 372.

However, Count IV is duplitious and redundant of Count III. As the Government has limited Count III to only the Joint Session of Congress and no other official proceeding and has limited Count IV to only Members of Congress performing their duties, both explicitly alleged to have been at the same time on the same day January 6, 2021, Defendant Harrelson cannot be

convicted of both Count III and Count IV.  As the Court has jurisdiction and the prosecution has authority only to prosecute what was alleged in the operative Indictment, Counts III and IV become the same charge as alleged in the Indictment.  The operative Indictment explicitly limits Count IV to preventing Members of Congress – and no other officer – from discharging their duties.  Therefore, Count IV is merely duplicative of Count III.

Count IV makes specific reference to the factual allegations of Paragraphs 1 through 13 and 18 through 134.  None of those allegations, however, even allege that Defendant Harrelson obstructed anything in any way or intended to do so.   Certainly there was no evidence presented, at any standard of proof, of any of the elements of the alleged crime being committed by Defendant Harrelson.

The Government suffered a failure of proof under Count IV.  Despite apparent jury confusion or rushing in haste or horse-trading during deliberation, there was no evidence presented in the record sufficient to convict Harrelson under Count IV of the Indictment.  An order of Acquittal is mandatory.

Count IV alleges in toto:

140.  From in and around December 2020, through in and around January 2021, in the District of Columbia and elsewhere, the defendants

**ELMER STEWART RHODES III**
**KELLY MEGGS**
**KENNETH HARRELSON**
**JESSICA WATKINS**
**ROBERTO MINUTA**
**JOSEPH HACKETT**
**DAVID MOERSCHEL**
**THOMAS CALDWELL and**
**EDWARD VALLEJO**

did knowingly conspire and agree together and with each other to prevent by force, intimidation, and threat, any person, that is

> Members of the United States Congress, from discharging any
> duties of any office, trust, and place of confidence under the
> United States, and to induce by force, intimidation and threat, any
> officer of the United States, that is, Members of the United States
> Congress, to leave the place where their duties as officers were
> required to be performed.

However, the evidence presented at trial was an amazing and surprising, total repudiation of the prosecution's theories. Every single witness – whether called by the prosecution or the Defendants were in 100% perfect agreement that there was never any plan to obstruct Members of Congress or any hearing or activity on or about January 6, 2021. Even the Government's own witnesses shot down the prosecution's theories (except witnesses who were called for other purposes and would have no knowledge on the subject).

The complete rejection of the Government's case by each and every relevant witness, without exception, was astonishing. So thorough was the evidence that the Defendants had no plan and no intent to prevent any Member of Congress from performing their duties that it is evident the prosecution stopped calling Defendants who had pled guilty. The testimony of even those who had pled guilty was backfiring against the prosecution so severely that the Government never called witnesses that they had said they would call.

Indeed, so complete was the collapse of the prosecution's case at trial, that the prosecution was left trying to confuse the jury into believing that the conspiracy was formed only seconds before Harrelson was shoved by the crowd into the U.S. Capitol building at the East Rotunda Doors / Columbus Doors, without words being spoken, by some imagined "knowing" glance among the Defendants. Not only is such an idea lacking in credibility but such a non-verbal conspiracy obviously suffers from a total lack of detail. There would be no possibility of proving beyond a reasonable doubt what the conspiratorial agreement agreed upon, what was its

objectives,

The Government is fond of trying to salvage defective claims of a conspiracy by quoting that the best measure of what conspirators agreed to is what they actually did.

So what did these Oath Keepers actually do?

The Defendants entered the Rotunda, admired the artwork, took photographs, scattered in various small groups, wandered in unfocused, uncoordinated, unplanned pathways, said a prayer,[16] assisted a police officer and left the U.S. Capitol building in a short time through different exits, at different times, separated from one another.  What then do we learn from the Government's maxim of looking at what the Defendants actually did?  Apparently that the Defendants entered into a last-minute, unspoken conspiracy by a knowing glance to take selfie photographs inside the U.S. Capitol and then leave separately and uncoordinated.

But the prosecution failed to produce any competent evidence as to any aspect of the criminal charge with regard to Defendant Harrelson.  None of the elements of the crime were proven beyond a reasonable doubt and with regard to Harrelson there was no probative evidence presented of any of the elements of the charged crime.  There was no credible evidence presented at all, much less evidence proving guilt beyond a reasonable doubt.

No evidence was presented at all that Harrelson ever intended, contemplated, considered, thought about or entered into any idea about inducing by force any officer of the United States, that is, Members of the United States Congress, to leave the place where their duties as officers were required to be performed. As to whether Harrelson was patting down an officer to probe for vulnerabilities, this was perhaps the most preposterous testimony disproved by the video[17]

---

[16] **https://rumble.com/v2msdg0-oath-keepers-pray-in-the-rotunda-at-244.html**
[17] https://rumble.com/v28c0lm-oath-keepers-exit-the-capitol.html

No evidence was presented at all that Harrelson ever intended, contemplated, considered, thought about or entered into any idea about inducing by intimidation any officer of the United States, that is, Members of the United States Congress, to leave the place where their duties as officers were required to be performed.

No evidence was presented at all that Harrelson ever intended, contemplated, considered, thought about or entered into any idea about inducing by threat any officer of the United States, that is, Members of the United States Congress, to leave the place where their duties as officers were required to be performed.

## VIII.  CONCLUSION

The Defendant requests this Court to grant this Motion and such other relief as may be deemed just.

Dated:  May 9, 2023              RESPECTFULLY SUBMITTED
                                 KENNETH HARRELSON, *By Counsel*

                                 /s/ Brad Geyer

                                 Bradford L. Geyer, PHV
                                 PA 62998
                                 NJ 022751991
                                 Suite 141 Route 130 S., Suite 303
                                 Cinnaminson, NJ 08077
                                 Brad@FormerFedsGroup.Com
                                 (856) 607-5708


## CERTIFICATE OF SERVICE

I hereby certify that on May 9, 2023, a true and accurate copy of the forgoing was electronically filed and served through the ECF system of the U.S. District Court for the District of Columbia.

                                 /s/ Brad Geyer
                                 Bradford L. Geyer, PHV

PA 62998
NJ 022751991
Suite 141 Route 130 S., Suite 303
Cinnaminson, NJ 08077
Brad@FormerFedsGroup.Com
(856) 607-5708