**UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| v. | : | Criminal Case No. 22-cr-15 (APM) |
| | : | |
| **KENNETH HARRELSON** | : | *Previously Included in* |
| | : | |
| Defendant | : | Case No. 21-cr-28 (APM) |
| | : | |

**SENTENCING MEMORANDUM REPLY**

**I.     Harrelson's Health**

Harrelson arrived in DC Corrections with normal blood work, but the diet there is high in starch and extremely low on protein. While in DC, he never had a protein source that wasn't soy. His blood work has reflected this with increasing blood glucose levels, increasing A1c, AST and ALT suggesting pre-diabetes and that he may have sustained organ damage. Attachment A.

Harrelson arrived in Lewisburg Prison on March 13, 2023, where BOP provided expert nutrition, kind treatment and humane conditions and his health quickly improved. However, on March 20, 2023, BOP drew blood that suggests the poor diet he received in DC Corrections may have pushed him to untreated type II diabetes and undersigned counsel would request the Court request that the BOP conduct a full medical evaluation and provide him with proper medications.

1

## II. Request for Assignment to Facilities Near the Defendant's Home

Defendant Harrelson respectfully requests, if appropriate, that the Court consider requesting that the Bureau of Prisons assign him to a facility near the family home. Since his arrest, Harrelson has been prohibited from Zoom visits so he has not seen the faces or communicated "face to face" with his children since his arrest.

For the Court's information the closest facility to the Defendant's home is Coleman Prison at 846 NE 54th Ter, Coleman, FL 33521 and the next closest facility is FPC 110 Raby Ave. Pensacola, FL 325509.

## III. The Government Uses Allegations as if Facts

One of the many errors and problems with the Government Omnibus Sentencing Memorandum ("GOSM") is that it is wrongly based upon the original allegations of the Grand Jury, which were not proven to be facts and are unsupported.

The Jury Instructions warned the jury that the indictment is not evidence, the statements of counsel are not evidence, the opening statement is not evidence, and the closing statement is not evidence.

The trial judge admonished the jury in jury instructions that the indictment is not evidence. The Honorable District Court Judge Amit Mehta instructed the jury on page 15 *(emphases added)*:

### Summary of Indictment

> With these preliminary instructions in mind, let us turn to the charges against the defendants, as contained in the indictment. ***The indictment itself is not evidence***. It merely describes the charges made against each defendant and is the means by which each defendant was formally notified of the charges against him or her. ***The indictment is merely an accusation.*** It may not be considered by you as evidence of the guilt of any

>defendant, and you must not draw any inference of guilt from it.

Yet now for the purposes of sentencing, the Department of Justice seeks to present knowingly false, unproven, or baseless allegations. The GOSM is entirely based upon the indictment. Because there was no special verdict, there is no indication that the jury resolved any of these factual disputes in favor of the Government.

Unfortunately, the USAO has shown a pattern in sentencing proceedings to try to accuse Defendants of additional crimes for which they have not been found guilty and argue facts not proven and legal conclusions not agreed to by the Court. The tendency by the USAO has been to argue ***disputed*** facts left ***unresolved.***. That problem is not a mere guideline that the Court *may not* base sentencing decisions on assertions of fact which have not been established at trial, are in conflict with the evidence at trial, or are disputed. Any assertion by the Government which has not been formally decided must be excluded from the Court's consideration. This is not discretionary.

Again, if a fact were unavoidably necessary to the jury verdict, the Court could presume that the jury decided the fact as a necessary stepping stone to a guilty verdict. But where a statute or the circumstances offer multiple options to the jury, the Court cannot under any circumstances speculate that the jury must have found a factual dispute proven. It would be a violation of constitutional due process and equal protection to sentence Kenneth Harrelson for a crime he did not commit or a fact associated with a conviction that are mere imagination by the prosecution.

The U.S. Sentencing Commission, Guidelines Manual, Annotated 2021 Chapter 6 - Sentencing Procedures, Plea Agreements, And Crime Victims' Rights explains:[1]

---

[1] **https://www.ussc.gov/guidelines/2021-guidelines-manual/annotated-2021-chapter-6**

3

Commentary

> Although lengthy sentencing hearings seldom should be necessary, ***disputes about sentencing factors must be resolved with care***. When a dispute exists about any factor important to the sentencing determination, ***the court must ensure that the parties have an adequate opportunity to present relevant information.*** Written statements of counsel or affidavits of witnesses may be adequate under many circumstances. See, e.g., United States v. Ibanez, 924 F.2d 427 (2d Cir. 1991). ***An evidentiary hearing may sometimes be the only reliable way to resolve disputed issues***. See, e.g., United States v. Jimenez Martinez, 83 F.3d 488, 494-95 (1st Cir. 1996) (finding error in district court's denial of defendant's motion for evidentiary hearing given questionable reliability of affidavit on which the district court relied at sentencing); United States v. Roberts, 14 F.3d 502, 521(10th Cir. 1993) (remanding because district court did not hold evidentiary hearing to address defendants' objections to drug quantity determination or make requisite findings of fact regarding drug quantity); see also, United States v. Fatico, 603 F.2d 1053, 1057 n.9 (2d Cir. 1979), cert. denied, 444 U.S. 1073 (1980). The sentencing court must determine the appropriate procedure in light of the nature of the dispute, its relevance to the sentencing determination, and applicable case law.

*Id. (Bolded and italicized emphases added).*

Here, however, because of the prosecution's determination to find crowds collectively liable, this problem is vastly multiplied. The fact that the prosecution wants to use a collectivist approach to criminal law alien to US. law creates enormous problems of asserted facts that have never been proven concerning Kenneth Harrelson.

The Government argues generically that:

> In determining the applicability of various specific offense characteristics, under §1B1.3 of the Guidelines, the Court should consider both the defendant's own acts or omissions and those whom the defendants aided, abetted, counseled, commanded, induced, procured, or willfully caused to commit this conduct (to include indicted and unindicted co-conspirators).

However, the jury did not find that Harrelson aided, abetted, counsel, commanded, induced, procured, or willfully caused <u>anyone</u> to commit this conduct. So §1B1.3 cannot apply

**IV.    Page 5**

The GOSM alleges in conflict with the evidence:

> Over time, leaders and affiliates from Oath Keepers chapters across the country joined together under Rhodes to accomplish this criminal goal—including, among many others, Florida Oath Keepers Kelly Meggs, Kenneth Harrelson, Joseph

4

> Hackett, and David Moerschel; Ohio Oath Keeper Jessica Watkins; Virginia Oath Keeper affiliate Thomas Caldwell

V.    Page 6

The GOSM alleges in conflict with the evidence:

> As the riot began to unfold at the Capitol, Meggs, Harrelson, Watkins, Hackett, and Moerschel joined with nine other Oath Keepers members and affiliates—many of whom were wearing paramilitary clothing and patches with the Oath Keepers name, logo, and insignia—and marched in a line formation ("Stack One" or "Line One") up the east steps of the Capitol.

But none of this is remotely true. Harrelson denies the unfounded allegations and demands strict proof or else that the Court disregard any allegations not proven. The evidence adduced at trial was that Harrelson had arrived dressed in street clothes with only Jason Dolan and climbed casually up the center East stairs through the crowd in no hurry. Almost half an hour the other Oath Keepers came along and noticed them and pushed through the crowd to reconnect with Harrelson and Dolan. The video evidence produced at trial showed these and Other Keepers arriving at random times from random directions, in completely unorganized and unrelated travel, and shortly thereafter scattering in different places in the Capitol and then leaving in separate directions out of separate exits. The raw allegations relied upon from the Grand Jury are not consistent with the evidence presented at trial. Therefore, the Court cannot consider the unsupported allegations presented in the GOSM.

VI.    Page 8

The GOSM alleges in conflict with the evidence:

> Rhodes, Harrelson, Watkins, Caldwell, Vallejo, and many co-conspirators exploited their military training and experience to help lend legitimacy to the cause and hone the group's tactics, to include using military-style gear, marching in "stack" formations, and preparing an armed Quick Reaction Force ("QRF") staged outside D.C. to support the mission.

But none of this is remotely true. Harrelson denies the unfounded allegations and demands strict proof or else that the Court disregard any allegations not proven. The evidence

adduced at trial was that Harrelson only decided to travel to Washington, D.C., in the evening of January 3, 2021. Therefore, Harrelson did not "lend legitimacy" to anything as he did not encourage anyone else from the evening of January 3, 2021, through the morning of January 4, 2021.

### VII.    Page 9

The GOSM alleges in conflict with the evidence:

> Many of the defendants—including Rhodes,2 Meggs, Harrelson, Hackett, Moerschel, Caldwell, and Vallejo—and their co-conspirators traveled across the country and surrounded the nation's capital with rifles, handguns, ammunition, and other weapons in preparation for their operation:

But none of this is remotely true. Harrelson denies the unfounded allegations and demands strict proof or else that the Court disregard any allegations not proven. The evidence adduced at trial was that Harrelson never brought or surrounded the capital with any weapons, nor was there an "operation" other than to provide volunteer security to protect lawful demonstrators. The Court cannot consider such unproven allegations but must strike them completely.

### VIII.    Page 33

The GOSM alleges in conflict with the evidence:

> *First*, the defendants who were members of Stack One, including Meggs, Harrelson, Watkins, Hackett, and Moerschel, in breaching the Capitol building, were part of a mob of rioters that caused injuries to Capitol Police officers guarding the doors to the building.

But none of this is remotely true. Harrelson denies the unfounded allegations and demands strict proof or else that the Court disregard any allegations not proven. The evidence adduced at trial was that Harrelson wandered separately up the stairs with Dolan, and he was not part of any mob, there were no rioters in the vicinity of Harrelson or Dolan, there were no injuries to any officers from any of the Oath Keepers, and there were no officers guarding the

doors.

### IX.     Page 35

The GOSM alleges in conflict with the evidence:

> *Fifth*, some conspirators, including Harrelson and Dolan, while breaching the building and marching through the Rotunda, chanted "Treason!" regarding those Members of Congress who were supposed to be inside the Capitol building performing their constitutional duties to meet to certify the election results.

But none of this is remotely true. Harrelson denies the unfounded allegations and demands strict proof or else that the Court disregard any allegations not proven. The evidence adduced at trial did not show Harrelson or Dolan saying any such thing. There was no evidence that Harrelson or Dolan marched anywhere at any time. There is no evidence as to whom someone shouting something was directing their shouts to or what they meant by them. There was no evidence that the shouts by persons other than Harrelson were "regarding" Members of Congress.

### X.      Page 39

The GOSM alleges in conflict with the law:

> Factually, Defendants Rhodes, Caldwell, and Harrelson (and co-conspirators Greene and Dolan) were unlawfully on the Capitol grounds before the Senate went into emergency recess at 2:13 p.m., and all members of Stack One (including Defendants Meggs, Watkins, Hackett, and Moerschel) were unlawfully on the Capitol grounds before the House went into emergency recess at 2:29 p.m.

But this is not the law. The Government admits that flimsy bike rack barriers to which 11 by 14 inch signs – seen tearing in some videos because they are only paper – were moved aside or torn down at around 1:00 PM. By the time the Oath Keepers arrived, there was no legal notice of any restricted area, much less where the boundary line might be. Therefore, no one on the Capitol Grounds after the removal of those signs was "unlawfully" on the Capitol Grounds: Consider: Does the Secret Service have the power under 18 U.S.C. 1752(a)(1) to order everyone to leave the entire District of Columbia? Why not? The President and Vice

President would be safer and easier to protect if the entire population of Washington, D.C. were ordered to leave. That seems to be what the Government is arguing – that 18 U.S.C. 1752(a)(1) is unlimited in scope and a strict liability crime. Harrelson rejects that. The Secret Service can only restrict a relevant area by proper legal notice which remains visible to the public and which is no broader than necessary to help protect the Secret Service protectee.

## XI.   Page 47

The GOSM alleges in conflict with the evidence:

> Here, there *was* a hierarchical relationship among the participants in the conspiracy.

But there was no evidence of this presented in the trial. This is merely a made up fantasy. To the extent that one might see shapes in the clouds, the hierarchy was Stewart Rhodes who was warming up from the chilly day in a friend's hotel room, the Vice President who was an undercover FBI agent but never reported any plan to enter or harm the Capitol or anyone in it, and Michael Greene the on-site team leader. None of these three were anywhere near the U.S. Capitol. So where does the belief that there was a hierarchical relationship come from other than from the clear blue sky.

There was no evidence of Harrelson managing any team. A typographical error by Kelly Meggs mentioned Kenneth Harrelson instead of the correct Michael Greene as the on-site team leader. Out of thousands of messages reviewed by the FBI, they found not one – not one – showing Harrelson being a team leader?

## XII.   Page 52

The GOSM alleges in conflict with the evidence:

> *Second*, under Note 4(B), Rhodes, Harrelson, Watkins, and Caldwell each provided false testimony either at trial or earlier court proceedings that "reflect[ed] a willful attempt to obstruct justice," U.S.S.G. § 3C1.1, cmts. n.2, 4(B).

But there was no evidence of this presented in the trial. This is merely pulled out of

the air. When a person testifies and the Government argues "We don't think that's right" it could be the Government that is wrong. There is no automatic rule that testimony with which the Government disagrees must be false testimony.

### XIII. Page 60

The GOSM alleges in conflict with the evidence:

> And the juries' guilty verdicts with respect to Count Four (conspiracy to prevent officers from discharging their duties) necessarily mean the juries found that Meggs, Harrelson, Watkins, Minuta, Hackett, Moerschel, and Vallejo knowingly agreed to use of "force" or "intimidation" to stop Members of Congress from discharging their duties, thereby inducing them to flee the House and Senate floors where the certification proceeding had been underway.

But this is false and it is not the law. It not necessary to the charge that Harrelson used any force or intimidation to stop Members of Congress – whom he never saw and never had any interaction with from anything. There was no evidence that Harrelson did anything to induce anyone to flee.

### XIV. Page 60

The GOSM alleges in conflict with the evidence:

> *First*, all nine defendants made extensive preparations to support the use of force in order to intimidate or coerce Congress and stop the certification proceeding. Almost immediately after the November 2020 election, in encrypted communications platforms and elsewhere, Rhodes and his co-conspirators began recruiting other members of the Oath Keepers to travel to D.C. on January 6, 2021.

But none of this is remotely true. Harrelson denies the unfounded allegations and demands strict proof or else that the Court disregard any allegations not proven. The evidence at trial showed that Harrelson did not decide to go to Washington, D.C. until January 3, 2021, late in the day. Why is the Government arguing concerning Harrelson about "almost immediately after the November 2020 election?"

### XV. Page 62

The GOSM alleges in conflict with the evidence:

9

Harrelson chanted "Treason!" as he stormed inside the Capitol.

Again, despite thousands of hours of video, there was no evidence of this whatsoever presented in the trial. Why is the Government stretching so far to include allegations that are so unsupportable?

Dated: May 16, 2023         RESPECTFULLY SUBMITTED
                            KENNETH HARRELSON, *By Counsel*

                            /s/ Brad Geyer

                            Bradford L. Geyer, PHV
                            PA 62998
                            NJ 022751991
                            Suite 141 Route 130 S., Suite 303
                            Cinnaminson, NJ 08077
                            Brad@FormerFedsGroup.Com
                            (856) 607-5708

### CERTIFICATE OF SERVICE

I hereby certify that on May 16, 2023, a true and accurate copy of the forgoing was electronically filed and served through the ECF system of the U.S. District Court for the District of Columbia.

                            /s/ Brad Geyer
                            Bradford L. Geyer, PHV
                            PA 62998
                            NJ 022751991
                            Suite 141 Route 130 S., Suite 303
                            Cinnaminson, NJ 08077
                            Brad@FormerFedsGroup.Com
                            (856) 607-5708